57 F.3d 1073
 149 L.R.R.M. (BNA) 3088
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
LOCAL 722, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
LOCAL 722, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.
 Nos. 94-3371, 94-3541.
 United States Court of Appeals, Seventh Circuit.
 Argued May 16, 1995.
Decided May 26, 1995.
 
 1
 Before EASTERBROOK, and KANNE, Circuit Judges, and ALLEN SHARP, Chief District Judge*.
 
 ORDER
 
 2
 This is a petition for review, with cross-application for enforcement from an order of the National Labor Relations Board (NLRB), under the Labor Management Relations Act, 29 U.S.C. 151 et sec.
 
 
 3
 The standard of review is deference to NLRB interpretation of law and "substantial evidence" for facts. Ford Motor Co. v. NLRB, 441 U.S. 488 (1979).
 
 ISSUE
 
 4
 Did the NLRB err in finding that the union violated the NLR Act, 29 U.S.C. 158(b)(4), when the union picketed at the Dixon and Amboy, Illinois job sites, attempting to enmesh neutral parties in its primary dispute with Kasper Trucking?
 
 FACTS
 
 5
 An Administrative Law Judge (ALJ) found that the union violated the Act by picketing certain construction sites. This dispute is over a trucking company -- Kasper. Kasper was contracted by Rockford Blacktop at the sites. Kasper's attorney informed the union that Kasper only employed independent contractor "owner-operator" drivers at the sites in question. The union says that isn't so. Union picketed at the Dixon and Amboy sites. Kasper brought charges, the ALJ ruled for Kasper, and the full Board wholly affirmed.
 
 
 6
 Kasper says it owns ten trucks and hires drivers, and also uses the services of about seventy independent owner-operators. Kasper says only owner-operators were employed on the jobs in question.
 
 DISCUSSION
 A.
 
 7
 The union wants to argue about whether Kasper was a broker as the Board's amended complaint contended. The union points out that Kasper admits it was not a broker. However, the ALJ decided it did not matter whether Kasper was a broker or not. The union is vehement about the broker issue, but such seems a little ridiculous. The amended complaint describes Kasper as a broker, but the ALJ points out that it also describes him as a contractor, which was apparently correct. The ALJ said he wasn't going to determine the broker issue because it was immaterial. The real issue is whether Kasper referred owner-operators rather than employees to the Dixon and Amboy sites. It is the status of the truck drivers which determines whether the union violated the Act, not the status of Kasper or any immaterial errors in the complaint.
 
 
 8
 The specific statute involved here is 29 U.S.C. 158(b)(4) which provides in relevant part:
 
 
 9
 (i) to engage in, or to induce or encourage any individual employed by any person ... to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services;
 
 
 10
 (ii) to threaten, coerce, or restrain any person ... where in either case an object thereof is ...
 
 
 11
 (B) forcing or requiring any person ... to cease doing business with any other person ...: Provided, that nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing.
 
 
 12
 These statutory provisions are generally labelled as dealing with "secondary boycotts" under which a union has a right to exert pressure against the primary employer in a labor dispute but may not use coercive tactics to widen such dispute and enmesh neutral or "secondary" employers, or their employees. NLRB v. Denver Building & Construction Trades Council, 341 U.S. 675, 686, 692 (1951). The words "induce or encourage" have been given a generous reading in Electric Workers Local 501 v. NLRB, 341 U.S. 694 (1951).
 
 
 13
 Recent progeny of Denver Building Trades in this circuit indicates that the issue of secondary motivation is fact specific and the an administrative finding to that effect will be upheld if supported by substantial evidence on the record as a whole. Operating Engineers Local 150 v. NLRB, 47 F.3d 218 (7th Cir. 1995). Such is precisely the situation here and Local 150 fully supports the decision of the Board.
 
 B.
 
 14
 There is a frontal attack on the ALJ. The union accuses him of being disingenuous, prejudiced, biased, and without objectivity. The union's diatribe against the ALJ is tiresome. This lawyer's conduct before ALJ leaves much to be desired. Administrative Law Judges are not a part of the Article III federal judiciary, but play a highly important role in the adjudication process in federal administrative law. Since the 1930's there has been an evolutionary attempt to upgrade their professionalism and the processes in which they operate. They are entitled to a least minimal professional respect by counsel appearing before them. In this case this ALJ received the back of the hand from this counsel. The comment of Judge Wood in U. S. v. York, 852 F.2d 221, fn.4, 227 (7th Cir. 1988), is well worthy of repeating here:
 
 
 15
 On review of the record, there is absolutely nothing which suggests a "hostile predisposition" on the part of the trial judge. The appellant merely did not prevail on some evidentiary rulings. The fact that we have subsequently determined that one of those rulings was incorrect in no way indicates that the trial judge was hostile to the appellant. Unfortunately, this is not the first time unfounded comments, such as those set out above, have appeared in papers filed in this court by this same law firm. Genson, Steinback & Gillespie. Such "flavorings" of the record, which assign improper motives to judicial determinations, trial or appellate, go far beyond the bounds of vigorous advocacy and will not be tolerated. See, e.g., Ill. Ann. Stat. ch. 110A Cannon 8; Rule 8-102(b) (Smith-Hurd 1985). We warn counsel in this case, and the bar of this court, to avoid characterization of judicial rulings by impugning the motives of the judge or judges involved, unless the allegations can be supported by more than the fact that a party was unsuccessful in the course of litigation.
 
 
 16
 However, the lack of civility of appellants' counsel is not the issue here. The issue is whether there is substantial evidence to support this decision and there is an abundant evidence to do so.
 
 
 17
 The order of the NLRB should be and is ENFORCED. The appellants petition for review is DENIED.
 
 
 18
 SO ORDERED.
 
 
 
 *
 Chief District Judge Allen Sharp, Northern District of Indiana, sitting by designation